MINERS' BANK OF JOPLIN *v.* CHURCHILL.

Opinion delivered December 11, 1922.

1. APPEAL AND ERROR—TIME FOR APPEALING—ESTOPPEL.—Where an appeal was dismissed on motion of appellees on the ground that it was not final in failing to adjudicate certain questions, and subsequently, by entry *nunc pro tunc*, the judgment was amended to show that such questions were determined, appellees could not move to dismiss a subsequent appeal taken more than six months after the original judgment but within six months from the amendment, since appellees, having taken the position on the first appeal that the original judgment was not final, could not, on second appeal, take the inconsistent position that the judgment was in fact final.

2. JUDICIAL SALES—PAYMENT OF TAXES DUE.—Crawford and Moses' Dig., § 10056, providing that whenever land shall be sold in partition proceedings or at judicial sale the court shall order the taxes against such land discharged out of the proceeds of such sale, relates to all judicial sales, and not merely to sales in partition proceedings.

3.  STATUTES—ADOPTION FROM ANOTHER STATE.—Where a statute was adopted from another State, it is presumed that the Legislature adopted the previous interpretation thereof by the court of last resort of the State from which it was borrowed.

4.  JUDICIAL SALES—PAYMENT OF TAXES DUE.—Crawford and Moses' Dig., § 10056, providing that when land is sold at judicial sale the court shall order the taxes against such land discharged out of the proceeds, has reference to the date of sale, meaning the day on which the land is bid in by the purchaser, and not to the confirmation.

5.  MORTGAGES—PAYMENT OF TAXES FROM PROCEEDS.—A foreclosure decree need not contain a direction for payment of taxes out of the proceeds of sale, but the court may direct such payment at any time before distribution of the fund.

Appeal from Van Buren Chancery Court; *Ben F. McMahan,* Chancellor; affirmed.

*Brundidge & Neelly,* for appellant.

The rule *caveat emptor* applies in this case. Crawford & Moses' Digest, §§ 10055a, 10056, being § 166, Acts 1883, p. 199, does not apply to the facts in this case. It applies to cases where a tract of land is owned by two or more persons or tenants in common, and one party fails to pay his taxes and the land is sold. In such case the taxes may be taken out of his part of the purchase price. The statute has reference to land which has become delinquent for taxes, and where the court orders the taxes, etc., to be discharged out of the proceeds of such sale. The latter part of the section, § 10056, C. & M. Digest, refers back to the first part of the same section, being § 10055, *Id.,* and, therefore, does not apply to foreclosure sales. 93 U. S. 424; 96 Fed. 910.

*J. F. Koone,* for appellee, Patton.

1. The appeal is too late, not having been perfected within six months after the rendition of the decree. C. & M. Digest, § 2140. A *nunc pro tunc* amendment relates back to the time when the original entry was made. 69 Ark. 433; 108 Ark. 523; 134 Ark. 386; 74 Ark. 181.

2. The statute in question appears to have been taken from the Ohio statutes, being in the exact language

of section 77, vol. 2, Revised Statutes of Ohio (1860), now appearing as § 5692 of Page & Adams' General Annotated Code of the Statutes of Ohio, vol. 3 (1910), and comes to this State impressed with the construction placed thereon by the court of last resort in that State, prior to its enactment here. The court's construction of the statute was contrary to appellant's contention here. 13 Ohio St. 201; 30 *Id.* 436. That court's construction was adopted with the enactment of the statute here. Lewis' Sutherland Statutory Construction, vol. 2, § 4; 117 Ark. 457; 113 Ark. 552; 109 Ark. 479. Taxes in this State are charged against land from and after the first Monday in January each year, C. & M. Dig. § 10016. The sale in this case was on January 11, 1919. The court, under this statute, could order the tax paid out of the proceeds of the sale either at the time of confirmation of the sale or thereafter. 30 Ohio St. 436.

McCULLOCH, C. J. Appellant instituted an action in the Van Buren Chancery Court against appellees Churchill and Sutterfield to foreclose a mortgage on real estate, and final decree was rendered in the action on November 11, 1918, for recovery of the debt and for the sale of the mortgaged real estate by the commissioner of the court, who was directed to advertise and sell in the manner and upon the terms specified in the decree.

The sale was made by the commissioner on January 11, 1919, after due publication of notice, and S. K. Patton became the purchaser at the sale for the price of $2,010, which was considerably less than the amount of the decree in appellant's favor.

At the next regular term of the court, on May 12, 1919, the commissioner's report of sale was confirmed by the court, and the commissioner was directed to pay the taxes for the year 1918, amounting to $561, out of the purchase price of the land. Appellant prosecuted an appeal to this court from that decree, but the appeal was dismissed by the judgment of this court on the ground that the decree appealed from was not final, in that it

failed to adjudicate that any taxes were due, and failed to fix the amount thereof and render judgment for the same. *Miners' Bank of Joplin* v. *Churchill*, 141 Ark 211.

At the next term of the court after the dismissal of the appeal, appellant filed a motion in the chancery court to correct the record of the former decree by ordering the commissioner to pay over to appellant, as plaintiff in the original decree, the amount which had been reserved for the payment of taxes. Thereupon Patton, the purchaser at the sale, filed a response to appellant's petition and also asked the court to correct the former order *nunc pro tunc* by showing a specific finding of the court as to the amount of taxes, and directing the commissioner to pay the same. On the hearing of these motions, the court entered an order *nunc pro tunc* so as to make it contain a finding by the court that the amount of taxes due on the land sold under the decree was the sum of $561.11, and directed that same be paid out of the proceeds of the sale. Another appeal has been prosecuted from the decree of confirmation as amended *nunc pro tunc*.

Appellees again moved the court to dismiss the present appeal on the ground that it was taken more than six months after the order was made directing the payment of taxes.

It is conceded now that the order was final within the rule laid down by this court on the former appeal, but appellees contend that, notwithstanding the order was amended *nunc pro tunc*, and long after the expiration of six months from the time of the order, the appeal must have been prosecuted within six months, notwithstanding the amendment, and that for this reason the present appeal is too late.

Counsel for appellees rely on the decision of this court in *Chatfield* v. *Jarratt*, 108 Ark. 523, where we held that an appeal runs from the date of the rendition of the judgment, and not from its entry, even though it is entered *nunc pro tunc* at a subsequent date or at a subsequent term. There is another principle, however, to be

considered, which we think is not in conflict with the decision in the case just cited, and which precludes appellees from insisting on a dismissal of the appeal for the reason that it was prosecuted after the time prescribed by the statute. This principle is that of estoppel, based on the fact that appellees took the benefit of a dismissal of the former appeal on the ground that there was no final judgment, and, having received that benefit, they cannot take an inconsistent position by insisting that the judgment was in fact final. In other words, they made their election to stand upon the proposition on the former appeal that the judgment originally appealed from was not final, and now they cannot be heard to insist that the decree was final at the time it was originally entered, and that the time for appeal expired six months thereafter, under the statute. There is no reason why this principle should not be applied here for the purpose of preventing an obviously unjust deprivation of appellant's exercising his right of appeal.

Treating the case as being here properly on appeal, we approach the merits of the controversy and find that they relate to the question whether or not the taxes for the year 1918, which had fallen due prior to the date of the sale, could be treated as an incumbrance on the land to be borne by the purchaser, or whether it should be paid out of the proceeds of the sale.

It will be seen from the record that the decree was rendered on November 11, 1918, and the sale at which Patton became the purchaser was made by the commissioner on January 11, 1919; that the sale was confirmed and the order on the commissioners to pay the taxes out of the proceeds of the sale was rendered on May 12, 1919.

Our statute provides that a lien for taxes as between grantor and grantee shall attach on the first Monday in January of each year. Crawford & Moses' Digest, § 10023. At the time of the sale there was then unpaid taxes due on the land which constituted a lien in favor of the State and county. It was well established at common law that the rule of *caveat emptor* applied to

purchasers at judicial sales, and that the purchaser took the land subject to all incumbrances existing at that time, including tax liens. This rule was changed as to tax liens, however, by statute which is a part of the general revenue laws enacted by the General Assembly of 1883. Acts of 1883, p. 199. Section 166 of that statute is divided up into two sections by the digesters (Crawford & Moses' Digest, §§ 10055-56) and reads as follows:

"In all cases where any tract of land may be owned by two or more persons as joint tenants, coparceners, tenants in common, and one or more proprietors shall have paid or may hereafter pay the tax, or tax and penalty, charged on his proportion of such tract, or one or more of the remaining proprietors shall have failed, or may hereafter fail, to pay his proportion of his tax, or tax and penalty, charged on said land, and partition of said land has or shall be made between them, the tax, or tax and. penalty, paid as aforesaid, shall be deemed to have been paid on the proportion of said tract set off to the proprietor who paid his proportion of said tax, or tax and penalty, and the proprietor so paying the tax, or tax and penalty, as aforesaid, shall hold the proportion of such tracts set off to him, as aforesaid, free from the residue of the tax, or tax and penalty, charged on said tract before partition, and the proportion of said tract, set off to the proprietor who shall not have paid his proportion of said tax, or tax and penalty, remaining unpaid, shall be charged with said tax, or tax and penalty, in the same manner as if said partition had been made before said tax, or tax and penalty, had been assessed. Whenever any land so held by tenants in common shall be sold upon proceedings in partition, or shall be taken by the election of any of the parties to such proceedings, or when any real estate shall be sold at judicial sale, or by administrators, executors, guardians, or trustees, the court shall order the taxes and penalties and the interest thereon against such lands to be discharged out of the proceeds of such sale or election."

The contention of appellant is that the words, "or when any real estate shall be sold at judicial sale," have reference to the preceding language concerning lands held by tenants in common, and that they do not relate to all judicial sales. We are of the opinion that this contention is not borne out by the language of the statute. In addition to that, it appears that this statute was copied from an Ohio statute enacted in the year 1859, which was interpreted by the Supreme Court of that State prior to the enactment of the statute here. In those decisions the language of the statute was construed contrary to the contention of appellant. *Ketcham* v. *Fitches,* 13 Ohio St. 201; *Hoglen* v. *Cohan,* 30 Ohio St. 436. The statute having been borrowed from another State, it is presumed that our lawmakers adopted the interpretation of it theretofore by the court of last resort of the State from which it was borrowed.

In the cases cited, the Ohio court construed the statute to mean that all taxes due and unpaid up to the date of the sale should be paid out of the proceeds of the sale, and should be paid by the commissioner when so ordered by the court.

It was also decided by the court that the statute, being in derogation of the common law, should be strictly construed, and that it did not embrace redemption from tax sale, but only embraced the discharge of tax liens due the State. In a later case it was decided by the court that the statute did not include local improvement assessments. *Cincinnati* v. *Lingo,* 13 Ohio Cir. Ct. 334; 7 Ohio Cir. Dec. 356; *Cincinnati* v. *Sterritt,* 57 Ohio St. 654.

In the present case the tax lien comes within the statute as interpreted by the Ohio court, which interpretation came to us by adoption. The language of the statute has reference to date of sale, meaning the day on which the land is bid in by the purchaser, and not to the confirmation. *Robertson* v. *McClintock,* 86 Ark. 255.

The question suggests itself as to when, under the statute, the order of the court must be made, whether at the time of the decree or later, before the fund is paid

out by the commissioner. We think that the statute itself declares that the tax shall be paid out of the proceeds of the sale, and it is not essential that the original decree directing foreclosure shall contain a direction for such payment, but the court may direct the payment at any time before the fund is disbursed. This is evidently the interpretation of the Ohio court from the discussion in *Hoglen* v. *Cohan, supra.*

It follows therefore that the court was correct in directing the payment of the taxes of the year 1918, which accrued and were payable prior to the date of sale, out of the proceeds of the sale in the hands of the commissioner.

Affirmed.