AMERICAN INSURANCE COMPANY *v.* HORNBARGER.

Opinion delivered February 17, 1908.

1. INSURANCE—DEFAULT IN PAYMENT OF PREMIUM—EFFECT.—The effect of so much of an insurance policy and of the notes given for the premium as provides that the policy shall be void during the time the notes for the premium, or any part thereof, shall remain unpaid after they became due and payable until they are fully paid was to suspend the operation of the policy during the time the notes or either of them remained overdue and unpaid, and to relieve the insurer from any liability for loss which may occur during the continuance of the default. (Page 345.)

2. SAME—AUTHORITY OF SOLICITING AGENT TO WAIVE DEFAULT.—An agent of an insurance company, having authority merely to solicit insurance, to receive and forward applications therefor to the general agent, and to receive and deliver policies and collect premiums, is

not authorized to extend the life of a policy after the insured has made default by failing to pay the premium notes, nor to waive proof of loss within the time and in the manner prescribed by the policy. (Page 345.)

3. SAME—LOSSES RECOVERABLE.—The insured is not entitled to recover losses on account of damages to property not insured; nor for loss of profits on the business insured, where that item of loss was not covered by the policy. (Page 345.)

4. EVIDENCE—OFFER OF COMPROMISE.—Evidence of acts done and words spoken, which were not admissions of facts as such, but were done and spoken in confidence, for the purpose of effecting a compromise, was inadmissible. (Page 345.)

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; reversed.

*J. W. & M. House,* for appellants.

1. The policy was inoperative, so long as the premium notes remained unpaid after maturity. A local agent has no power to waive suspension of a policy of insurance by reason of non-payment of notes given for the premium; and the fact of payment by the insured after the fire does not have a retroactive effect; it only revives the policy from the date of payment. 74 Ark. 507; 75 Ark. 29.

2. There was no proof of loss. The statement furnished the company was not a compliance with the stipulations of the policy requiring a sworn proof of loss. This requirement cannot be waived by the local agent. 60 Ark. 532; 64 Ark. 592; 72 Ark. 47.

The policy of insurance does not cover prospective profits. They are too speculative and remote. The policy is against direct loss by fire. 60 S. W. 395; 38 Am. Dec. 295; 4 Cooley's Brief, 3070, 3071. Other items in the claim are not covered by the policy, *e. g.,* damages to harness and saddles, getting up horses, loss of the use of a horse, etc.

3. Testimony relative to the several waivers attempted to be proved by appellees was inadmissible, such waivers not having been pleaded. 36 Pac. 53; 10 L. R. A. 842; 49 N. W. 218; 36 N. W. 781.

4. The court erred in admitting other testimony that was incompetent and prejudicial.

5.   It was error to tax a twelve per cent. penalty upon the judgment and an attorney's fee.   The statute authorizing it is unconstitutional.   Art.  11,  § § 3, 7, 8, 13 and 18, Const.; 49 Ark..492; 55 Ala. 193; 60 Miss. 641; 70 Mich. 382; 77 Mich. 104; 53 Ohio St. 12; 48 L. R. A. 341; 64 L. R. A. 325; 68 Pac. 138.

*Brooks, Hays & Martin,* for appellees.

1.   The agent granted the extension of time on the unpaid balance. If the act was unauthorized, the company owed the duty promptly to disaffirm it.   Forfeiture was waived.   75 Ark. 98; *Id.* 75; 98 S. W. 694; 96 S. W. 365; Vance on Insurance, 351 *et seq.;* 63 Ark. 187.   See also 104 S. W. 200.

2.   The testimony shows that there was no objection to any of the items of the claim except as to whips and lap robes, and that the matter was turned over to the agent, Carden, for adjustment, who, in effect, told Harris that all was admitted and agreed to except those items; and thereupon Harris deducted the same from the claim.   This was a settlement.   74 Ark. 72; Vance on Ins. 354.   As to the objections raised now to other items of the claim, see Vance on Ins. 475; 13 Ill. 76; 99 Am. Dec. 695; 2 Am. Rep. 22; 49 Me. 200; 77 Am. Dec. 608; 75 Am. Dec. 638.

3.   The statute under which the twelve per cent. penalty and attorney fee were taxed is valid.   72 Ark. 357; 49 Ark. 455.

BATTLE, J.   On the 28th of May, 1906, Mack Hornbarger and B. F. Harris, partners under the firm name of Hornbarger & Harris, commenced an action at law against American Insurance Company, of Little Rock, Arkansas.   They alleged in their complaint that the defendant, "on the first of September, 1905, in consideration of the sum of $90, by its policy of insurance insured plaintiffs for a term of one year against loss or damage by fire or lightning, in an amount not exceeding $3,000, upon the following property, in the following amounts, while contained in the brick barn with iron roof, situated on the southeast corner of Russell and Jefferson streets, in the town of Russellville, Pope County, Arkansas, towit:   $1,500 on 40 head of horses and mules; $100 on hay in barn; $1,250 on wagons, buggies and harness in barn or shed; and $150 on corn in barn.   That on January 15, 1906, a fire broke out in the city of Russellville on

Jefferson Street, and spread rapidly over every part of said city and to the place of business and property of this plaintiff, and, the danger therefrom being so apparent and real, and it being the duty of plaintiffs, under the terms of said policy for the protection of defendant, to remove said property to a place of safety, they did so remove the same, and were damaged by said removal in the sum of $231. That defendant had notice of said fire under said policy, and that the plaintiffs had performed all conditions on their part, as they were required to do under said policy."

They asked for judgment for $231 and twelve per cent. on the amount of their loss and for attorney's fees.

The defendant answered and admitted "that on the first day of September, 1905, in consideration of the sum of $90, the defendant company issued a policy of insurance No. 2595, insuring the plaintiffs against loss or damage by fire and lightning for a term of one year in an amount not exceeding three thousand ($3,000) dollars upon the property mentioned in the complaint, but it denied that said $90 premium was paid in cash or paid at all, but to the contrary it stated that $10 of said $90 of premium were paid cash, the balance was to be paid in two notes of $40 each, one due and payable on the 1st day of October, 1905, and the other on the 1st day of November, 1905. That at the time of the fire or loss complained of there were $20 past due on the note which was due and payable on the first day of October, 1905, and the entire note of $40 due and payable on the 1st day of November, 1905, was past due and unpaid; that on each of said notes as well as in the policy, there is the following clause: 'If paid at or before maturity, all interest waived, said amount being for cash premium on my insurance this day applied for; and it is further agreed that, if this note is not paid at maturity, the whole amount of premium on said insurance shall be considered as earned and the contract null and void so long as this note remains overdue and unpaid.' That said notes and policy here referred to are made a part of this answer. That, by reason of the fact that said notes were due and unpaid at the time of the alleged loss, said policy was null and void."

Defendant "further stated that plaintiffs failed to make

proof of loss as required under the policy, in that under the policy they were required to make a detailed statement, showing the amount of loss or damage, etc., which they had sustained, within thirty days; that no proof of loss of any character whatever was made to this defendant of any loss or damage occasioned by fire; that, by reason of the failure to make said proof of loss, the policy became null and void."

Defendant denied that plaintiffs lost $231 by reason of the fire, and that it is indebted to them in any sum whatever.

The facts, as shown by the evidence, are in part as follows: Ten dollars of the $90 to be paid as premium were paid at the time the policy of insurance was executed. Two notes for forty dollars each were executed by plaintiffs for the remainder, one due and payable on the first day of October, 1905, and the other on the first day of November, 1905. The notes contained the following clause: "If paid at or before maturity, all interest waived, said amount being for cash premium on my insurance this day applied for; and it is further agreed that if this note is not paid at maturity, the whole amount of premium on said insurance shall be considered earned, and the contract shall be null and void as long as this note remains overdue and unpaid."

The policy contained the following clauses:

"When a promissory note is given by the insured, for the premium charged for this policy, or any part thereof, it shall be considered payment, provided such note is paid at or before maturity, but it is expressly understood and agreed by and between the parties hereto that, should any loss or damage occur to the property herein mentioned, and the note given for the premium, or any part thereof, remain past due and unpaid, in whole or in part, at the time of such loss or damage, then this policy shall be null and void. It is expressly stipulated and agreed that any attempt by the said American Insurance Company to collect such promissory note, whether by legal proceedings or otherwise, shall not be deemed a waiver by said company of any condition of this policy."

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and

undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within thirty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and all others in the property, the cash value of each item thereof, and the amount of loss thereon, all incumbrances thereon," etc.

A fire occurred in the town of Russellville on the 15th of January, 1906, destroying a large part of the business portion of the town. The flames approached so close to the place of business, where the property insured at the time was, as to make it necessary to move it to places of safety. In doing so plaintiffs were damaged.

M. H. Carden and J. F. Monday were agents of the defendant at Russellville. The evidence does not show what they were authorized to do, except they had one of the premium notes for collection.

All the premium notes were due before the fire occurred, and at least a part of one was not paid until after the fire.

Harris, one of the plaintiffs, testified as follows: "The last note Mr. Carden presented to me myself, and I paid $20 on it. I asked Mr. Carden to extend the time of payment, and he agreed to an extension of time. During the time the last twenty was unpaid the fire occurred. After the fire Mr. Carden came up by the People's Bank, and said there were $20.80 due on that note, and asked me if we had made out our claims and sent them in, and he said it would be a good idea for me to pay that, and I paid it that day." And over the objection of the defendant testified further as follows: "I went to the local agent, Mr. Carden, and asked him for blank proof of loss, and he said he did not have any. I made out a list of the damages, and said, 'Will that be sufficient?' and he said, 'I think so.' I don't know whether the company received it or not. Mr. Carden told me the company received it." A copy of the proof so made out was read as evidence, over the objection of the defendant. It is as follows:

"Russellville, Ark., Jan. 16, 1906.

"M.

"In account with Mack Hornbarger, Livery, Feed and Sale Stable.

| | |
|---|---:|
| Moving out | $ 50.00 |
| Replacing in barn | 50.00 |
| Gathering up horses | 20.00 |
| Damage to buggies | 18.00 |
| Damage to harness and saddles | 15.00 |
| Loss, five lap robes | 15.00 |
| Loss of whips | 2.50 |
| Feed and going after one horse | 5.00 |
| Out of use of same horse, 8 days | 6.00 |
| Out of business 2 days | 50.00 |

"$231.00"

It was not sworn to and was not otherwise in conformity to the policy.

Evidence was adduced, over the objection of the defendant, to show what was said and done in an effort to compromise.

The court instructed the jury, over objections of defendant, as follows:

"3. If you find from the testimony that any part of the premium was due and unpaid at the time of such fire, but that previous thereto the duly authorized agent of the said company called on the insured for payment, and, by agreement had at the time by and between such agent and the plaintiff, the payment of said note or premium or any part thereof should be extended for a short time, and that during that time the loss occurred, then the defendant could not claim a forfeiture of said policy, and on this issue you will find for the plaintiff."

"4. If you find from the testimony that, at the time of the loss mentioned in plaintiff's complaint, there was due and unpaid a note, or any part thereof, given for the premium charged for the insurance policy, then your verdict will be for the defendant, unless you should further find that the defendant, by its agent having at the time such note for collection, agreed to extend the time of payment of such amount for a short time, and that during such time said loss occurred, and that shortly there-

after the said agent called on the plaintiffs for such balance, and that the same was paid; then your verdict will be for the plaintiff on this issue."

"5.   The jury are instructed that, although the notice of loss must be given by the plaintiff to defendant insurance company as required, yet the defendant insurance company may waive any delinquency on the part of the insured as to the form of notice in this respect.   And such waiver may be inferred from any conduct on the part of the insurers clearly inconsistent with any intention to insist upon the failure to give such notice in the form provided in the policy."

"6.   The jury are instructed that the items sued on in this case are proper under the terms of the policy of insurance, except as to the lap robes and whips, and the loss or damage sustained thereby, if you find there was any such loss or damage, was the loss by fire under the terms of the policy; and in determining the amount of such loss you will take into consideration all the testimony in the whole case, and find such sum as you think the testimony shows, not to exceed, however, the sums claimed in itemized statement of damages, if you should find there was any damage."

"2m.   The jury are instructed that there is the following clause in the notes executed by the plaintiffs to the defendant for the premium on the policy of insurance sued on herein, towit: 'If paid at or before maturity, all interest waived.   Said amount being for cash premium on my insurance this day applied for, and it is further agreed that, if this note is not paid at maturity, the whole amount of premium on said insurance shall be considered earned, and the contract be null and void, as long as this note remains overdue and unpaid.'   And, if you believe from the testimony that, at the time of the alleged loss, any of the notes given for the said premium were not paid, you must find for the defendant, unless you find from the evidence that there had been an extension of the time for the payment of such note given plaintiff by the defendant."

The jury returned a verdict in favor of the plaintiffs for $213.50.   Judgment was rendered accordingly, and the defendant appealed.

The effect of so much of the policy and of the notes given

for the premium as provides that the policy shall be void during the time the notes for the premium, or any part thereof, shall remain unpaid after they become due and payable until they are fully paid, was to suspend the operation of the policy during the time the notes or either of them remained overdue and unpaid, and to relieve the insurer from any liability for any loss which may occur during the continuance of the default. *Jefferson Mutual Insurance Company* v. *Murry,* 74 Ark. 507; *Fidelity Mutual Insurance Co.* v. *Bussell,* 75 Ark. 25.

But appellees contend that the extension by the agent of the time for the payment of the balance due on the notes continued the policy in force. But there is no evidence that he had any authority to continue the policy in force, and before any act of his could have that effect it was necessary for appellees to show, not only that he was agent of appellant, but that the continuance of the policy in force was within the real or apparent scope of his authority. *American Insurance Co.* v. *Hampton,* 54 Ark. 75. The authority to solicit insurance, receive and write applications for insurance and forward the same to appellant's general agent, and to receive and deliver policies and collect premiums, would not impower him to do so. His act, to be valid, must be confined within the scope of his authority as shown by the evidence. *Fidelity Mutual Life Insurance Co.* v. *Bussell,* 75 Ark. 29; *Mutual Life Insurance Co.* v. *Abbey,* 76 Ark. 328, 331, and cases cited above.

The agent, so far as shown by the evidence, had no authority to waive proof of loss within the time and manner prescribed by the policy. See authorities cited above.

Appellees were not entitled to recover any losses, except those covered by the policy of insurance. They were not entitled to recover losses on account of damage to saddles, loss of robes, of whips, of use of horse, and of business and its profits. There was no insurance against them, as shown by the policy.

Evidence of acts done and words spoken in this case for the purpose of effecting a compromise, which were not admissions of facts because they were facts, and were in confidence, was inadmissible. Appellant had the right to buy its peace if it could. I Greenleaf on Evidence, (16 Ed.), § 192.

The court erred in giving to the jury the instructions copied

in this opinion, and in admitting improper evidence as indicated; and such errors were prejudicial.

Reverse and remand for a new trial.